## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | |
|---|---|
| APRIL L. MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:17-CV-266-TLS |
| | ) |
| FWCS SOUTH TRANSPORTATION, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff April L. Moore, proceeding pro se, filed a Complaint [ECF No. 1] against Defendant FWCS South Transportation on June 26, 2017. In the Complaint, she alleged that she was fired from her position with the Defendant because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 (Title VII). On June 18, 2018, the Defendant moved for summary judgment [ECF No. 25], and provided notice of the same to the Plaintiff [ECF No. 28]. The Plaintiff did not respond, and instead moved the Court for the appointment of counsel [ECF No. 30] on July 23, 2018. The Court denied the motion on July 27, 2018 [ECF No. 31]. As of the date of this Opinion and Order, the Plaintiff has not responded to the Defendant's Motion for Summary Judgment.

## BACKGROUND

The Plaintiff is an African-American woman, who worked as a bus assistant for the Fort Wayne Community Schools (FWCS) prior to her termination. Bus assistants at FWCS are typically assigned to special needs buses. They also ride with students who have Individual Education Plans or Behavioral Intervention Plans. These students often have mental or emotional

issues, which can lead to disruptive behavior. Transportation management has found that an aggressive approach is often ineffective when these special needs students are verbally disruptive on the bus. Thus, bus assistants are discouraged from taking aggressive, confrontational approaches to resolve disruptive behavior. Instead, whenever possible, de-escalation techniques are preferred.

FWCS has established Bus Assistant Responsibilities and Guidelines. The Guidelines outline many of the basic expectations for bus assistants. These expectations note, among other things, that:

> The first priority of the Bus Assistant is the safety of all students. Nothing should compromise this priority. . . . The transportation of special needs . . . students is a highly personal service and requires a thorough assessment of the student's physical, social, emotional and intellectual capacities. Mutual respect . . . [is] an absolute necessity. . . . Bus Assistants are to work with students in a positive and professional manner. Whether you realize it or not, you serve as a role model for each of your students. Situations will arise to test your patience, but you must conduct yourself in a professional manner at all times. . . . Be diplomatic at all times to students, parents, and others. Language that is demeaning or belittling to a student should not be used in any conversation. An argumentative response to comments should be avoided and great care should be used to remain composed. Confrontation by word or action will only escalate the opportunity for negative responses.

(Ex. A, ECF No. 25-1.) Additionally, all FWCS employees are bound by the FWCS policy on corporal punishment, which provides that "the School Board does not condone the use of unreasonable force and fear as an appropriate procedure in student discipline." (Jackson Decl. ¶ 10, ECF No. 25-1). Employees are also subject to the Code of Ethics, which requires them to "[m]ake the well-being of students the fundamental value in all decision-making and actions," and "[d]emonstrate commitment to [their] role as educational leaders and role models through [their] language . . . and behavior." (*Id.* at ¶ 11.) Finally, the Plaintiff, as a classified employee,

was also prohibited from making "[a]ny statement, action, or conduct not in the best interests of the school corporation." (*Id.* at ¶ 12.)

The Defendant also presented evidence that transportation department employees receive training that is consistent with these expectations. For instance, they are taught that the use of force against a student is only appropriate where a child is a danger to himself or others. (*Id.* at ¶ 13–14.) Employees are also taught to use de-escalation techniques when a student becomes unruly. (*Id.* at ¶ 15.) In her deposition, the Plaintiff acknowledged the appropriate course of action when confronted with a disruptive student is de-escalation. (Moore Dep. 48:1–5.) She also acknowledged that this is especially true for students with mental or emotional issues. (*Id.* at 48:6–9.)

In the fall of 2016, the Plaintiff worked as a bus assistance on buses that carried special education students, many of whom had mental or emotional problems. On October 18, 2016, the Plaintiff was working an afternoon route on Bus #227. There were a few elementary students on the bus at that time. One of the students, referred to as "B." by the Defendant, was approximately nine years old at the time of the ride. The Plaintiff knew B., and was aware that B. was a special education student with mental and emotional issues.

That day B. was disruptive on the bus. During the course of the ride, B. stood up after he was accused of kicking a student who was walking down the bus aisle. B. then made a scene. The driver asked the Plaintiff to intervene, but initially the Plaintiff remained in her seat and indicated to the driver that the driver should handle it herself. However, shortly afterward the Plaintiff told B. to sit down. Rather than sit down, B. began to yell at the Plaintiff. The Plaintiff then responded by standing up, approaching B., and yelling at him to sit down. When she reached B., the Plaintiff grabbed him and wrestled him into his seat.

Thereafter, and for the next several minutes, the Plaintiff tangled with B. She held his arms, and used her body to wedge him inside the wall of the bus. At times, she also pinned B. to his seat using her arm against his upper chest and neck. Throughout, B. protested, cried, and begged to be released. Despite these pleas, the Plaintiff continued to restrain him. At one point, the driver asked the Plaintiff if she wanted a mobile unit to assist.[1] She declined.

Other students on the bus became disruptive, too. One student, referencing B., shouted, "Kill him! Kill him! Kill him!" Another made some remark, to which the Plaintiff responded with a threat to impose a five day suspension. Throughout the incident, and thereafter, the Plaintiff made numerous loud and angry remarks to B. Towards the end of the incident, the Plaintiff told the driver to "burn rubber" to get B. home. She also declared that she was going to press charges against B. The entire encounter was captured on the bus's video recording system. (*See* ECF No. 27.)

After the incident, the Plaintiff reported to transportation management that B. had pulled her hair. To verify this account, the Supervisor of Driver Operations reviewed the video from the bus. The Director of Transportation did too. After reviewing the video, they concluded that the Plaintiff used improper force against B. They consulted a human resources (HR) employee who agreed with their conclusion. As a result, the Plaintiff was suspended on October 19, 2016, one day after the incident.

On October 27, 2016, the Director and HR employee met with the Plaintiff and her union representative. They asked the Plaintiff to review the video and provide her side of the story. The HR employee felt that the Plaintiff did not satisfactorily explain her behavior in the video. After the meeting, the Supervisor, HR employee, Director of Transportation, and the Director of South

---

[1] A mobile unit is a school resource officer or police officer who meets the bus en route to deal with a disruptive student.

Transportation unanimously concluded that the Plaintiff used improper force against the student, and that she should be terminated. Thereafter, the Plaintiff was recommended for termination on November 11, 2016. Although the Plaintiff wanted her union to challenge the recommendation, the Plaintiff's union refused to assist her. The FWCS Board of School Trustees then approved the Plaintiff's termination.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Although facts and reasonable inferences are construed in favor of the nonmoving party, this does not extend to inferences supported only by speculation or conjecture. *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997).

## ANALYSIS

Under Title VII, it is unlawful for an employer "to . . . discharge any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2. The Seventh Circuit follows the *McDonell Douglas* framework for analyzing Title VII claims on summary judgment. *See David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Under this framework, the Plaintiff must make a prima facie showing of discrimination by:

> [E]stablishing that (1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer's legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer.

*Id.* at 225 (quoting *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014)) (internal quotation marks and alternations omitted). When a plaintiff meets this burden, then a defendant must "articulate a legitimate, nondiscriminatory reason for the adverse employment action[.]" *Id.* (citing *Andrews*, 743 F.3d at 234). The plaintiff then has the opportunity to show that the defendant's given reason is pretextual. *Id.*

In this case, the Plaintiff has not made a prima facie case of discrimination. She has not presented any evidence that (a) she performed reasonably on the job in accordance with her employer's legitimate expectations, and that (b) similarly situated employees outside of her protected class were treated more favorably by the employer. In fact, the Defendant has put forth evidence showing that multiple employees outside of the Plaintiff's protected class were similarly disciplined for similar behavior towards students. The Defendant also asserts, and puts forth evidence documenting the same, that the Plaintiff was terminated because she did not perform her job reasonably in accordance with the Defendant's legitimate expectations, which are provided by the Bus Assistant Responsibilities and Guidelines and the Defendant's policy on corporal punishment. The Defendant presented evidence that the Plaintiff violated both the Guidelines and the policy.

The Plaintiff's primary argument, put forth the Complaint, is that the school district knew that the bus she was on at the time of the incident was disruptive, but that the school district did nothing about it until after the incident. That is not an adequate basis for a claim of racial discrimination in employment. The Plaintiff also acknowledged in her deposition that she has no

evidence to show that the Defendant's stated rationale for her termination was pretextual. (Moore Dep. 179:22–180:23, ECF No. 25-1.)

Therefore, the Plaintiff has not met her burden to make a prima facie showing of racial discrimination in employment under Title VII. Additionally, even if she had, the Defendant has provided a legitimate, nondiscriminatory reason for the Plaintiff's termination, and the Plaintiff has no evidence that the decision was pretextual. Accordingly, no genuine issues of material fact remain for trial, and the Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 25]. The Clerk is DIRECTED to enter judgment for the Defendant, and close the case.

SO ORDERED on August 28, 2018.

                                      s/ Theresa L. Springmann
                                      CHIEF JUDGE THERESA L. SPRINGMANN
                                      UNITED STATES DISTRICT COURT